J-S57035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.A.H.T.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.D.T., MOTHER | : | No. 893 MDA 2019 |

Appeal from the Decree Entered May 2, 2019
in the Court of Common Pleas of Berks County
Orphans' Court at No(s): 86248

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 24, 2019**

J.D.T. ("Mother") appeals from the Decree granting the Petition filed by the Berks County Children and Youth Services ("BCCYS") and involuntarily terminating Mother's parental rights to her daughter, K.A.H.T.E. ("Child"), born in November 2015, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1] Mother's counsel, Gregory S. Ghen, Esquire ("Counsel"), has filed a Petition to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967). We grant Counsel's Petition to withdraw as counsel, and affirm the trial court's Decree.

The trial court summarized the procedural and factual history as follows:

---

[1] On November 13, 2015, an acknowledgement of paternity was signed by D.O.G.E. ("Putative Father"). Subsequently, pursuant to DNA tests, D.M. ("Biological Father") was determined to be the father. Putative Father consented to adoption, and the trial court involuntarily terminated the parental rights of Biological Father. Neither Putative Father nor Biological Father has filed an appeal or is a party to the instant appeal.

[O]n March 31, 2017, the [t]rial [c]ourt took [] Child into emergency protective custody after obtaining an Order from the Hon[orable] Mary Ann Ullman of the Berks County Court of Common Pleas. In its Dependency Petition to obtain protective custody, BCCYS asserted the following allegations, among others, with regard to Mother and [Putative] Father:

….

(b) [Putative] Father was late to a meeting with a BCCYS caseworker because he had just been released from the Berks County Prison that day;

(c) Mother and [Putative] Father had ongoing domestic violence issues resulting in each filing Protection from Abuse [Petitions] ("PFAs") against the other;

(d) [Putative] Father texted Mother in February 2017[,] telling her he was dropping [] Child off with BCCYS because he "can't do it anymore";

(e) [Putative] Father posted a picture to social media on March 21, 2017, in which he was smoking something. He captioned the picture with: "Smoking the pain away ...[.] This shit is killing me"; and

(f) On March 30, 2017, [Putative] Father admitted to a BCCYS caseworker that he was smoking [synthetic cannabinoids] in the presence of [] Child.

On May 22, 2017, the [t]rial [c]ourt entered an Order declaring [] Child dependent, finding by clear and convincing evidence that BCCYS had established the allegations set forth in its [P]etition seeking dependency. In its dispositional [O]rder, the [t]rial [c]ourt ordered Mother to comply with certain services, treatment, and testing. The [t]rial [c]ourt expanded that list of obligations through subsequent Orders … as a result of Mother's continued failure to make suitable progress. Among other things, Mother was ordered to:

(a) Participate in casework sessions through BCCYS[,] and comply with any recommendations;

(b) Maintain a stable lifestyle, including appropriate housing and a sufficient, legal[,] source of income;

- 2 -

(c) Sustain a stable mental health and participate in any recommended evaluations and treatment;

(d) Sustain a clean and sober lifestyle, participate in any recommended evaluations and treatment;

(e) Submit to random urinalysis;

(f) Sustain a safe and violence free lifestyle, participate in any recommended domestic violence evaluations and treatment;

(g) Sign releases of information for any service providers; and

(h) Participate in visitation with [] Child as scheduled, while acting in an appropriate manner.

Over the next 22 months, Mother made little to no progress in complying with these requirements.

Trial Court Opinion, 7/15/19, at 4-6 (footnotes and citations to record omitted).

On July 26, 2018, BCCYS filed Petitions for Involuntary Termination of Parental Rights as to Mother, Biological Father, and Putative Father, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On January 22, 2019, BCCYS withdrew its Petition as to Putative Father, and filed a Petition to confirm Putative Father's consent to adoption.

A hearing was conducted on the termination Petitions on April 29, 2019. Mother and Biological Father were present and represented by counsel.

BCCYS presented the testimony of Biological Father, Mother, and Christine Wisniewski ("Wisniewski"), a BCCYS adoption caseworker.[2]

By Decree entered May 2, 2019, the trial court involuntarily terminated the parental rights of Mother to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[3]  On May 28, 2019, Mother, through counsel, filed a Notice of Appeal, as well as a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On August 20, 2019, Counsel filed with this Court a Petition to withdraw as counsel and an *Anders* brief.  When counsel files an *Anders* brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw.  *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa. Super. 2013).  In *In re V.E. & J.E.*, 611 A.2d 1267, 1275 (Pa.

_____

[2] Child was represented by Carmen Stanziola, Esquire ("Attorney Stanziola"), as guardian *ad litem* ("GAL") and legal counsel during this proceeding.  *See In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) (plurality) (holding that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding, and defining a child's legal interest as synonymous with his or her preferred outcome); *see also In re T.S.*, 192 A.3d 1080 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome).  As Child was three years old at the time of the hearing and too young to express a preference, we find the requirements of Section 2313(a) are satisfied.

[3] The Decree does not specify the subsections under which the court terminated Mother's parental rights.  However, we observe that in its Opinion, the court appears to suggest that all grounds requested by BCCYS are supported.  *See* Trial Court Opinion, 7/15/19, at 11-13.

Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he or she must

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record …, counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal…; and
>
> (3) furnish a copy of the brief to [the client] and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

**In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief

> (1)  provide a summary of the procedural history and facts, with citations to the record;
>
> (2)  refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)  set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)  state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. "After an appellate court receives an **Anders** brief and is satisfied that counsel has complied with the aforementioned

requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, 856 A.2d at 1237.

With respect to the third requirement of ***Anders***, that counsel inform the client of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

In the instant case, our review of the ***Anders*** Brief and the Petition to withdraw reveals that Counsel has substantially complied with each of the requirements of ***Anders***/***Santiago***. ***See Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa. Super. 2007) (stating that counsel must substantially comply with the requirements of ***Anders***). Counsel indicates that he has made a conscientious examination of the record and determined that an appeal would be frivolous. Further, Counsel's ***Anders*** Brief comports with the requirements set forth by the Supreme Court of Pennsylvania in ***Santiago***. Finally, Counsel provided Mother with a copy of the ***Anders*** Brief and advised her of her rights to retain new counsel or to raise any additional points deemed worthy of the Court's attention. Thus, Counsel has complied with the procedural requirements for withdrawing from representation. We next examine the record and make an independent determination of whether Mother's appeal is, in fact, wholly frivolous.

Counsel's **Anders** Brief raises the following issue for our review:

Did the [trial court] err by terminating [Mother]'s parental rights because the evidence presented by [BCCYS] was insufficient to support the [trial] court's decision?

**Anders** Brief at 4.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations, quotation marks and brackets omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G. & J.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." **In re Adoption of T.B.B.,** 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court

determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's termination Decree pursuant to subsections 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

***

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

- 8 -

> abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(a)(2), (b).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.   To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities….  [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous."  ***In re A.L.D.***, 797 A.2d at 340 (internal quotation marks and citations omitted).

Further, as to Section 2511(b), our Supreme Court has stated,

if the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267 (citations, quotation marks and brackets omitted). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121.

Moreover,

[w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent….

- 10 -

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quotation marks and citations omitted).

With regard to subsections 2511(a)(2) and (b), the trial court stated as follows:

> The [t]rial [c]ourt believes Mother genuinely cares for and loves [] Child. Although the [t]rial [c]ourt appreciates the profound significance of these proceedings, Mother knew she needed to comply with court-ordered services since very early in the dependency process. Although Mother does appear to have completed parenting classes and domestic violence counseling, she failed to take advantage of the majority of visitation periods with [] Child, she did not provide urine screenings to BCCYS as required, and she failed to start mental health treatment until approximately one month prior to the Termination Hearing, *after* BCCYS filed the Petitions.

> The [t]rial [c]ourt is not without sympathy for Mother[,] who detailed many challenges she says have prevented her from complying fully with the ordered services. The [t]rial [c]ourt cannot, however, allow [] Child to exist indefinitely in legal limbo without the permanency she deserves while everyone waits for Mother to reach a point where she may, someday, possibly be able to care for [] Child. By Mother's own admission, she believes [Biological] Father (who did not appeal the termination of his parental rights) would be better suited to care for [] Child than she would.

> BCCYS offered testimony that [] Child is well-bonded with her resource family. The foster family is a long-term, adoptive resource, and [] Child appears healthy and secure in her placement. Further, Child has spent a majority of her life in placement, with only limited contact with Mother. [] Child was 16 months old at the time of placement, with the Termination Hearing taking place approximately 25 months later.

> After much reflection on the matter, and after careful consideration, the [t]rial [c]ourt terminated Mother's parental rights to offer [] Child the permanency she needs. [] Child deserves stability, permanency, and an opportunity to grow up in

an environment free of the disruption and turmoil surrounding the dependency process.

***

The [t]rial [c]ourt did not come to this decision lightly, and it did so upon a showing of clear and convincing evidence that, among other things, [] Child was bonded to her resource family, that such bond outweighed Mother's limited bond with Child, and that the needs and welfare of [] Child are met through granting the termination of parental rights. As such, the [t]rial [c]ourt entered its Decree terminating the parental rights of Mother to [] Child.

Trial Court Opinion at 11-13 (footnotes omitted; some brackets in original).

Our independent review of the record reveals that Mother exhibited no compliance with the permanency plan and made no progress toward alleviating the circumstances which necessitated Child's placement. Significantly, Wisniewski reported that Mother's Interstate Compact on the Placement of Children ("ICPC")[4] was "denied for failure to comply with all of her services." N.T., 4/29/19, at 56; **see also** Exhibit 13. Wisniewski indicated that she discussed the denial with Mother, and that Mother was aware that approval was required for reunification. **See** N.T., 4/29/19, at 56. Further, Mother acknowledged the necessity of the ICPC and of completing the court-ordered services for reunification. **Id.** at 41.

While Mother completed parenting classes and intensive outpatient treatment, Mother did not follow through with and complete drug and alcohol treatment or mental health treatment. **Id.** at 56-57 (wherein Wisniewski

---

[4] An ICPC was required, as Mother resided in New Jersey. N.T., 4/29/19, at 55-56.

testified that Mother did not complete "[d]rug and alcohol services and the mental health services. I believe she completed parenting. She did complete the intensive outpatient program, but then she was to continue in drug and alcohol counseling and did not do so."); *see also* Exhibit 28. As to mental health treatment, Mother admitted that she had only attended two sessions since commencing treatment in March 2019.[5] *See* N.T., 4/29/19, at 30-31, 41. Further, as to drug and alcohol treatment, Mother testified that she did not complete the stepdown subsequent to her intensive outpatient treatment program. *Id.* at 41. Furthermore, Mother's last drug screen was in October 2018, and she could not say that, if she submitted to a drug screen the day of the hearing, it would be clean. *Id.* at 45, 57.

In addition, at the time of the hearing, Mother's last visit with Child was in August 2018. *Id.* at 57. Notably, Mother only attended two hours of visitation between March 4, 2017, and May 18, 2017; three hours between May 12, 2017, and July 7, 2017; fifteen and one-quarter hours between July 8, 2017, and November 6, 2017; and approximately six and one-quarter hours between November 7, 2017, and January 5, 2018. *See* Exhibits 14, 15, 16,

---

[5] Mother was diagnosed with post-traumatic stress disorder and anxiety as well as depressive disorder. *See* N.T., 4/29/19, at 32, 43. Mother conceded that she was admitted to Temple University Hospital "just to treat my mental [*sic*] at the time." *Id.* at 49; *see also* Exhibit 23. While she admitted to feeling suicidal, she denied that this was a suicide attempt. *See* N.T., 4/29/19, at 50-51.

and 17. It appears that Mother then had one visit in May 2018, and two in August 2018. *See* Exhibits 19, 20, and 21.

As such, Wisniewski expressed her concerns were as follows:

That [Mother] has not fully engaged in mental health treatment. We also do not have urine screens. We don't know if she's currently using. She did not successfully complete drug and alcohol. Her employment has been stable now at this point since September. She did just obtain an apartment. So whether or not she's able to maintain that on her own, that is yet to be determined since that is new.

*Id.* at 57-58.

The record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for [her] physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272; *see also* 23 Pa.C.S.A. § 2511(a)(2). Moreover, Mother cannot or will not remedy this situation. *See id.* § 2511(a)(2). Accordingly, the record supports the trial court's finding of grounds for termination under Section 2511(a)(2).

As to subsection (b), the evidence reveals that Child is in a foster home that is a long-term resource, where she had resided for approximately two years at the time of the hearing. *See* N.T., 4/29/19, at 60-61. Child is happy in the home and her needs are met. *Id.* at 60. As described by Wisniewski, "[Child is] very comfortable there. She sees that as her home. She calls her foster mom[] mommy. She looks to them to meet her needs." *Id.* at 60. Mother even admitted that Child appeared happy in her foster home and is well taken care of. *Id.* at 42.

Highlighting that Mother has not had a visit with Child since August 2018, and has not seen Child since last in court in November 2018, Wisniewski related no concerns with terminating Mother's parental rights. *Id.* at 60-61. Wisniewsky testified that "[Child] has not seen [Mother] since August, 2018, for a visit. And [Mother] testified that she saw her when she was last in court in November. But[,] because it's already been another five months[,] I don't think [Child] would recognize [Mother] at this point." *Id.* at 61. Further, Wisniewski testified that Child does not ask for Mother. *Id.*

Noting the bond between Child and her foster family, Attorney Stanziola reiterated that termination of parental rights would be in Child's best interest, stating, "[h]aving observed this young lady and observed the interactions between her and foster mom, I believe there is a strong bond between her and the foster family[,] … [and] there would be a lack of detriment severing the bond between this young lady and her natural parents…." *Id.* at 65. Additionally, Wisniewski opined that termination is in Child's best interest, stating, "she needs to have permanency and [] stability long-term." *Id.* at 61. At the time of the hearing, Child had already been in care for just over two years and is entitled to permanency and stability. Thus, as confirmed by the record, termination of Mother's parental rights serves Child's developmental, physical and emotional needs and welfare, and was proper pursuant to Section 2511(b).

Based on the foregoing independent analysis of the trial court's termination of Mother's parental rights, we discern no abuse of discretion. The

record supports the trial court's finding that Child's developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to subsections 2511(a)(2) and (b). Accordingly, because we agree with Counsel that the within appeal is wholly frivolous, we grant Counsel's Petition to withdraw, and affirm the Decree of the trial court.[6]

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2019

---

[6] Further, we note that our independent review of the record did not reveal any additional, non-frivolous issues overlooked by counsel. **See Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015).